**EXECUTION SCHEDULED FOR JANUARY 14, 2021**

No. 21-3

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff – Appellee,**

**v.**

**COREY JOHNSON, A/K/A O, A/K/A CO,**

**Defendant – Appellant.**

---

**CAPITAL CASE**

**CORRECTED BRIEF OF APPELLANT COREY JOHNSON**

---

Donald P. Salzman
Jonathan Marcus
David E. Carney
Skadden, Arps, Slate, Meagher &
Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Appellant Corey Johnson*

## TABLE OF CONTENTS

Introduction ............................................................................................................1

Statement of Jurisdiction.........................................................................................3

Statement of the Issues............................................................................................3

Statement of the Case..............................................................................................3

Summary of Argument ............................................................................................9

Standard of Review ...............................................................................................11

Argument................................................................................................................11

I.     **The District Court Erred in Concluding it had Jurisdiction to Modify the Original Judgment and Order Implementing the Death Sentence.**..............................................................................................11

    A.     **A criminal sentence cannot be amended, except under limited circumstances that are not present here.** ...........................11

    B.     **The district court's 2005 orders modifying the sentence are void for lack of jurisdiction.** ...........................................................15

    C.     **The district court's conclusion that the 1996 execution order is severable from the criminal judgment is erroneous.**........17

    D.     **The district court's reliance on Rule 35 and § 3582 in denying Mr. Johnson's motion is misplaced.**................................20

    E.     **The "timeliness" objections are misplaced.** ...................................21

Conclusion .............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Berman v. United States*,
302 U.S. 211 (1937) ........................................................................ 10, 15, 18, 19

*Burnham v. Superior Court of California*,
495 U.S. 604 (1990) ....................................................................................17

*Burton v. Stewart*,
549 U.S. 147 (2007) ....................................................................................19

*Dillon v. United States*,
560 U.S. 817 (2010) ....................................................................................11

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) ............................................................................. 11, 21

*Kentrick v. Ryan*,
540 U.S. 443 (2004) ....................................................................................22

*Parr v. United States*,
351 U.S. 513 (1956) ............................................................................. 10, 19

*United States v. Chacon*,
533 F.3d 250 ............................................................................................11

*United States v. Chambers*,
956 F.3d 667 (4th Cir. 2020) ........................................................... 10, 11

*United States v. Cotton*,
535 U.S. 625 (2002) ......................................................................... 11, 20, 21

*United States v. Fraley*,
988 F.2d 4 (4th Cir. 1993) ..........................................................................12

2

*United States v. Griffin*,
60 F.3d 826, 1995 WL 417628 (4th Cir. 1995).....................................................12

*United States v. Hartwell*,
448 F.3d 707 (4th Cir. 2006)...............................................................................23

*United States v. Higgs*,
No. 98-cr-520, 2020 WL 7707165 (D. Md. Dec. 29, 2020) ........................ passim

*United States v. Jones*,
238 F.3d 271 (4th Cir. 2001) .......................................................................... passim

*United States v. Lightner*,
266 F. App'x 240 (4th Cir. 2008).........................................................................15

*United States v. Martin*,
913 F.2d 1172 (6th Cir. 1990).............................................................................20

*United States v. Taylor*,
778 F.3d 667 (7th Cir. 2015)...............................................................................22

*United States v. Tipton*,
90 F.3d 861 (4th Cir. 1996).............................................................. 4, 5, 10, 18

*United States v. Washington*,
549 F.3d 905 (3d Cir. 2008)................................................................................16

## STATUTES

18 U.S.C. § 3582..................................................................................... passim

18 U.S.C. § 3596.............................................................................................17

28 U.S.C. § 1291................................................................................................3

28 U.S.C. § 2255...........................................................................................6, 23

## RULE

Fed. R. Crim. P. 35................................................................................. passim

3

**Introduction**[1]

Corey Johnson is scheduled to be executed in two days' time pursuant to a judgment that is a legal nullity.[2]  He has filed this expedited appeal to prevent the government from carrying out an illegal execution.

As part of Mr. Johnson's death sentence in the District Court for the Eastern District of Virginia, the district court ordered that his execution be carried out at the Virginia state correctional facility housing the death chamber, in the manner prescribed by the law of the Commonwealth of Virginia.

Six years later, after the Judgment and Order were long final, the government asked the district court to modify the "terms" of the death sentence. Specifically, it sought to rescind the Virginia-specific provisions and instead authorize the Director of the Bureau of Prisons to carry out the sentence at the newly-built death chamber at the federal prison in Terre Haute, Indiana.

---

[1] This corrected version of the brief includes previously omitted Table of Contents, Table of Authorities, and corrects some citations to the record in the parties' Joint Appendix. An updated word count is included in the compliance certification.

[2] The District Court for the District of Columbia entered an order today enjoining the government from moving forward with the scheduled execution.  *See In the Matter of the Federal Bureau of Prisons' Execution protocol Cases*, No 1:19-mc-00145 (D.D.C. Jan. 12, 2021), ECF No. 395.  The government is appealing that order.

The government cited no authority for its request. It merely argued that since it had built its own death chamber in the intervening years, there was "no continuing reason" to abide by the terms of the original sentence.

The district court granted the motion and entered a new sentencing order. But it should not have. Indeed, *it did not have jurisdiction to do so*.

A criminal sentence cannot be amended. Although there are limited exceptions to this rule, none applies here. This proposition is so clear and straightforward that the government recently conceded this very point in another federal capital case in this Circuit and abandoned its request that the district court amend the judgment implementing the death sentence. *See United States v. Higgs*, No. 98-cr-520, 2020 WL 7707165 at *3 (D. Md. Dec. 29, 2020).

The government's 2005 request that the district court amend Mr. Johnson's original criminal Judgment and Order was something it plainly could not do. And it is axiomatic that an order entered by a court lacking jurisdiction is void. Thus, the district court's order purporting to modify Mr. Johnson's sentence is—and was—a legal nullity. His execution can only be carried out pursuant to the original district court Judgment and Order implementing the death sentence.

2

In the wake of the *Higgs* decision, Mr. Johnson moved to vacate the court's invalid order amending the judgment and sentence. The district court denied the motion. And explained below, its denial was erroneous and must be reversed.[3]

### Statement of Jurisdiction

The district court entered its order denying Mr. Johnson's motion on January 12, 2021. J.A.56.[4] A timely notice of appeal was filed that same day. J.A.171. Therefore, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

### Statement of the Issues

Whether the district court erred in failing to vacate orders that it lacked jurisdiction to enter in the first place and were therefore void as a matter of law?

### Statement of the Case

Mr. Johnson was formally sentenced to death by the United States District Court for the Eastern District of Virginia on June 1, 1993. At that sentencing hearing, the court considered an outstanding defense motion to "bar execution of

---

[3] The terms "judgment" and "sentence" and "judgment and order" are used interchangeably throughout this pleading, in accordance with applicable case law in this context. *See, e.g.*, *United States v. Jones*, 238 F.3d 271, 272 (4th Cir. 2001) (variously referring to the imposed sentence as the "judgment," "sentence," and "judgment order").

[4] The citation "ECF No." refers to the electronically-filed documents in the district court case from which this appeal arises, E.D. Va. Case No. 3:92CR68. The citation "Dkt." refers to the conventionally-filed documents in the same district court case, prior to the institution of an electronic filing system.

3

the defendants due to the absence of a Congressionally-authorized execution method." J.A.90. In its oral ruling on the motion, the court stated:

> I think in styling or titling or fashioning their motion in that way, it somehow misses the point, which will become clear from my ruling on the issue.

> To answer the direct questions of the defendants, I will state up front that *I will not exclude death as a punishment in fashioning the sentences that I will impose this morning. I will impose a death penalty as part of any sentence I announce this morning.*

> At the same time, I specifically find that the Attorney General's regulation establishing the procedures for executing federal death sentences is ultra vires and with no legal force or effect.

> …

> I agree with the Judge in the case of UNITED STATES v. CHANDLER, the Alabama case, that *the sentences of death that I impose cannot be implemented unless and until Congress provides a method for implementation of the death sentence. Of course, if a higher court were to consider the matter and determine that I am in error about this, I would follow their direction and outline a method of execution.*

J.A.90-91 (emphasis added). The court thereafter entered the judgment imposing a sentence of death on Counts 8, 11, 17, 18, 19, 24, and 25. *See* J.A. 104. Per its oral ruling, however, it refrained from issuing the requisite order authorizing the government to implement the judgment, pending further direction from this Court.

The government subsequently cross-appealed the district court's order declaring that the federal regulations governing the manner of executions were *ultra vires. United States v. Tipton*, 90 F.3d 861, 868 (4th Cir. 1996). On July 8, 1996, this Court vacated that order and remanded "with instructions to enter

4

appropriate orders for the executions in accordance with regulation promulgated by the Attorney General." *Id*. at 903.

On November 22, 1996, the district court entered the requisite order. *See* J.A.109. It stated:

> Pursuant to instructions from the United States Court of Appeals for the Fourth Circuit to enter an order of execution in accordance with regulations promulgated by the Attorney General, it is hereby ORDERED that:
>
> 1. The Attorney General shall release Cory Johnson, a/k/a "CO", to the custody of a United States Marshal who shall supervise implementation of the sentence of death *in the manner prescribed by the law of the Commonwealth of Virginia*, Va. Code Ann.§§ 53.1-232 - 236 (Michie 1994 & Supp. 1996);
>
> 2. The United States Marshal charged with supervising the implementation of the sentence of death, may use appropriate State or local facilities and services of an appropriate State or local official for the purpose, and shall pay the costs thereof in an amount approved by the Attorney General;
>
> 3. The sentence shall be executed by electrocution or by continuous intravenous injection of a substance or combination of substances sufficient to cause death;
>
> 4. The method of execution shall be chosen by the prisoner. In the event the prisoner refuses to make a choice at least fifteen days prior to the scheduled execution, the method of execution shall be by lethal injection;
>
> 5. The sentence shall be executed on March 20, 1997.
>
> 6. Not less than four (4) days before the time fixed in this Order for the execution of the sentence, the United States Marshal, *in conjunction with the Director of the Virginia Department of Corrections, shall cause Cory Johnson, a/k/a "CO", to be conveyed to the State correctional facility housing the death chamber*; and

5

7. The United States Marshal designated to supervise the implementation of the sentence of death shall certify the fact of the execution to this Court by filing an appropriate document with the Clerk of this Court.

The Clerk is directed to send a copy of this Order to all counsel of record, the Attorney General, and the Director of the Virginia Department of Corrections.

And it is SO ORDERED.

J.A.109 (emphasis added). This 1996 order, together with the 1993 judgment it implemented, constituted the final Judgment and Order of the district court.

On February 20, 1997, Mr. Johnson filed a Consent Motion to Stay Executions, J.A.157, to pursue available avenues of relief, including certiorari on post-conviction review under 28 U.S.C. § 2255. The following day, the district court entered an order staying the execution pending further order of the court. J.A.112.

In October of 2005, after Mr. Johnson's request for certiorari review of the denial of his § 2255 motion was denied, the government moved to lift that stay. *See* J.A.114. In that same motion, however, it also sought to modify the "terms" of the death sentence. J.A.119. As the government noted, "pursuant to the terms of this Court's order, petitioners' executions were to take place at 'the State correctional facility housing the death chamber,' and each petitioner was to be allowed to choose electrocution or lethal injection as the method of execution." J.A.116.

6

The government did not cite any provision that authorized the district court to modify the sentence. It simply noted that subsequent to the original Judgment and Order, the government built a "functioning death chamber at the Terre Haute Federal Correctional Institution," and thus there was "no continuing reason for this Court to designate 'the State facility housing the death chamber' as the place where petitioners' executions should be carried out." J.A.117-118. Similarly, the government argued that there was "no reason" for the executions to be implemented in the manner prescribed by the law of the Commonwealth of Virginia, and that the Court should instead order that the executions be carried out at Terre Haute by means of lethal injection. J.A.118-119.[5]

On November 17, 2005, the district court granted the government's motion. *See* J.A.82. Without citing any authority establishing its jurisdiction to do so, the court simultaneously filed an order modifying the sentence as follows:

> Pursuant to the imposition of the sentence of death that was handed down by the jury on February 16, 1993, [it] is hereby ORDERED that:
>
> 1. The sentence of death shall be executed by a United States Marshal designated by the Director of the United States Marshals Service;
>
> 2. The sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death;

---

[5] Although defense counsel objected to the government's request to lift the stay, they did not respond to its request to modify the terms of the death sentence.

3. The sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons;

4. Cory Johnson shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence;

5. The United States Marshal designated by the Director of the United States Marshal's Service to carry out the sentence of death shall promptly return to this Court the appended document to inform this Court that the sentence of death has been executed.

J.A.84.

Shortly thereafter, in 2006, the government was enjoined by the United States District Court for the District of Columbia from carrying out Mr. Johnson's execution pending a challenge to the government's lethal injection protocol. *See* J.A.134 (recounting procedural history). That injunction was vacated on September 20, 2020. J.A.139.

On November 20, 2020, the Bureau of Prisons issued a notice to Mr. Johnson "that a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on June 1, 1993, by Judge James R. Spencer of the United States District Court for the Eastern District of Virginia." J.A.130. Pursuant to that notice, the government intends to execute Mr. Johnson by lethal injection on January 14, 2021, at the federal prison in Terre Haute, Indiana.

On January 10, 2021, Mr. Johnson filed a motion to vacate the 2005 orders on the grounds that the district court lacked jurisdiction to amend or modify the

8

original Judgment and Order. J.A.69. As Mr. Johnson noted, a separate court in this same Circuit recently came to the same conclusion on nearly indistinguishable facts. *See United States v. Higgs*, No. 98-cr-520, 2020 WL 7707165 (D. Md. Dec. 29, 2020).[6] The district court entered an order requiring an expedited response from the government, no later than 8:00 a.m. on January 12, 2021, and further notified the parties it intended to rule on the matter without a reply from Mr. Johnson. J.A.173.

On January 12, 2021, the district court denied Mr. Johnson's motion. J.A.56. Mr. Johnson thereafter took this appeal.

### Summary of Argument

This Court has taken a very narrow view of the authority of a district court to amend *any* aspect of a criminal sentence in the absence of an explicitly recognized exception authorizing such amendment. Only a few limited exceptions to this rule exist, none of which applies here. *See* 18 U.S.C. § 3582(c) (permitting sentence reductions for "extraordinary and compelling reasons," for certain elderly

---

[6] The government has appealed that decision and the matter is pending before this Court. *See United States v. Higgs*, No. 20-18 (4th Cir.). Notably, the government *has not* appealed the district court's ruling that it lacked authority to amend the order implementing the death sentence. Instead, it has pursued an entirely different claim that a separate statute, which has no bearing on Mr. Johnson's case, authorized the court to presently designate the state law governing the implementation of the death the sentence. *See Higgs*, No. 20-18 (4th Cir.) (ECF No. 6 at 15-23). The government has simultaneously filed a petition for writ of certiorari before judgment to the Supreme Court on that issue.

9

prisoners, as "otherwise expressly permitted by statute," or pursuant to sentencing range reductions); Fed. R. Crim. P. 35 (permitting sentence corrections for clear error or sentence reductions for substantial assistance to the Government); *see also United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020) ("Generally, sentences may not be modified once imposed.").

Because there was no recognized exception authorizing the district court to amend Mr. Johnson's criminal Judgment and Order, the court lacked the authority to grant the government's 2005 motion to modify the terms of the death sentence. Since the court did not have the power to modify Mr. Johnson's sentence, its order purporting to do so was void for lack of jurisdiction.

The district court's failure to vacate these orders on the theory that the 2005 orders did not modify the judgment was erroneous. J.A.58. The Court's 1993 judgment became complete and final when, pursuant to this Court's remand order, it "enter[ed] appropriate orders for the executions in accordance with regulation [sic] promulgated by the Attorney General." *Tipton*, 90 F.3d at 903. At that point, its 1996 order implementing the sentence merged with the 1993 judgment. *See Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."); *Parr v. United States*, 351 U.S. 513, 518 (1956). On its face, the 2005 order plainly modified the terms of the death sentence set out in the original Judgment and Order.

10

Nor was the district court correct in concluding that the 1993 judgment was final on its own. That judgment required the sentencing order that followed in 1996 for there to be a final judgment to be implemented by the government.

To the extent the district court deemed the motion untimely, that concern does not foreclose relief. Challenges to a court's jurisdiction can never be forfeited or waived. In fact, once such a challenge is raised, a court must consider it. *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

## Standard of Review

This Court reviews questions of law, including the interpretation of criminal statutes, de novo. *See United States v. Chacon*, 533 F.3d 250, 253 (4th Cir. 2008).

## Argument

I.    **The District Court Erred in Concluding it had Jurisdiction to Modify the Original Judgment and Order Implementing the Death Sentence.**

A.    **A criminal sentence cannot be amended, except under limited circumstances that are not present here.**

A "'judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alteration in original) (quoting 18 U.S.C. § 3582(b)); *see also United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020) ("Generally, sentences may not be modified once imposed."). Specifically, "[a]fter sentence has been imposed, the

11

district court may not alter the sentence except as authorized by Fed. R. Crim. P. 35 or 18 U.S.C.A. § 3582(c)." *United States v. Griffin*, 60 F.3d 826, 1995 WL 417628, *2 (4th Cir. 1995) (unpublished table decision); *accord United States v. Fraley*, 988 F.2d 4, 6 (4th Cir. 1993).

In its 2005 motion seeking to modify the Original Judgment and Order, the Government did not acknowledge the prohibition on modifying criminal judgments, nor did it suggest which of the limited exceptions would apply to permit a sentence modification in Mr. Johnson's case. Neither Federal Rule of Criminal Procedure 35 nor § 3582(c) authorized an amendment to Mr. Johnson's judgment, and the Government never contended otherwise.

Rule 35(a) allows courts to "correct a sentence that resulted from arithmetical, technical, or other clear error." And Rule 35(b) allows courts to reduce a sentence if the defendant has provided substantial assistance to the Government in another prosecution.[7] Neither provision applies here.

Section 3582(c) is likewise inapplicable. It permits sentencing reductions for "extraordinary and compelling reasons," and for certain prisoners over seventy years of age. 18 U.S.C. §§ 3582(c)(1)(A)(i)–(ii). And it permits sentencing

---

[7] Rule 35 sentence corrections or reductions must also occur within fourteen days or one year of sentencing, respectively. Fed. R. Crim. P. 35(a), (b)(1). These deadlines have long passed. Later motions for sentence reduction are permitted only in limited circumstances not applicable here. *See* Fed. R. Crim. P. 35(b)(2).

12

modifications to a "term of imprisonment" that are "otherwise expressly permitted by statute" or Rule 35, § 3582(c)(1)(B), and in certain circumstances where sentencing ranges have been lowered by the United States Sentencing Commission, § 3582(c)(2).  Again, none of these circumstances is present here, and the Government does not contend otherwise.

Title 18 U.S.C. § 3582(b) makes clear that the above-listed narrow circumstances are the exclusive exceptions to the prohibition on sentence modifications:

> (a)    Effect of finality of judgment.—Notwithstanding the fact that a sentence to imprisonment can subsequently be—
>
> (1)    modified pursuant to the provisions of subsection (c);
>
> (2)    corrected pursuant to the provisions of rule 35 of the Federal Rules of Criminal Procedure and section 3742; or
>
> (3)    appealed and modified, if outside the guideline range, pursuant to the provisions of section 3742;
>
> a judgment of conviction *that includes such a sentence* constitutes a final judgment *for all other purposes*.

18 U.S.C. § 3582(b) (emphasis added).

In the absence of an applicable exception set forth in either Rule 35 or § 3582(c), the district court lacked authority to modify Mr. Johnson's Judgment and Order nine years after it was imposed.  Indeed, this Court has "taken a very narrow view of the authority of district courts to amend *any* aspect of a criminal

13

sentence in the absence of an explicitly recognized exception authorizing such amendment." *Higgs*, 2020 WL 7707165, at *4.

In *United States v. Jones*, 238 F.3d 271, 272-73 n.2 (4th Cir. 2001) (per curiam), this Court held that a district court lacked authority to amend the defendant's judgment to require immediate payment of a $10,000 fine imposed four years earlier, even though the amendment sought to bring the sentence in compliance with subsequent case law. As the Court observed, "[a]lthough there are circumstances under which a district court may modify or correct a criminal judgment order, none of them authorize[s] the district court to [amend a judgment] based solely on a subsequent change in case law." *Jones*, 238 F.3d at 272. Moreover, this Court specifically rejected the government's argument that it should nevertheless affirm the district court's amending order because the defendant could not "show that he was harmed by the amendment." *Id*.

Notably, the amendment at issue in *Jones* did not change the sentence that was imposed; the amount of the fine stayed the same. Rather, it changed the *implementation* of the sentence. The terms of the original judgment stated that the fine would be paid pursuant to a payment schedule established by the Bureau of Prisons, whereas the amendment required that that the fine "shall be due and payable immediately." *Id*. If a district court lacks authority to change the terms of the implementation of a fine, it follows *a fortiori* that it has no authority to change the terms of the implementation of a death sentence.

This Court's opinion in *United States v. Lightner*, 266 F. App'x 240, 242 (4th Cir. 2008), is also instructive. There, the district court sought to "clarify the verbiage used in Mr. Lightner's Judgment and Commitment" regarding payment of a fine. This Court explained that while the district court's action was "intended to clarify the language of the sentencing court and to enforce the sentencing court's original intent, [this Court] find[s] that the district court's opinion constituted an unauthorized amendment to the judgment … 'through the back door,'" and invalidated the amendment. *Id.*

*Lightner* is consistent with the longstanding principle that even the most minor changes that have the effect of altering final criminal judgments are improper. In "criminal cases, as well as civil, the judgment is final for the purpose of appeal when it terminates the litigation between the parties on the merits and leaves nothing to be done but to enforce by execution what has been determined." *Berman v. United States*, 302 U.S. 211, 212–13 (1937) (internal quotation marks and citations omitted). *Berman* therefore rejected a district court's attempt to resentence a defendant by adding a one-dollar fine to each count of conviction while otherwise not altering the initial sentence. *Id.* at 212, 214.

### B. The district court's 2005 orders modifying the sentence are void for lack of jurisdiction.

None of the limited exceptions under which a court can modify a criminal judgment applied in Mr. Johnson's case. In the absence of an applicable

exception, the Court lacked jurisdiction to grant the government's motion to vacate the terms of the death sentence and enter a modified judgment and order. *See United States v. Washington*, 549 F.3d 905, 916-17 (3d Cir. 2008) (district court lacked authority to vacate sentence procured by defendant's fraudulent impersonation of another individual because it had no inherent power to modify sentence for reason not enumerated in Rule 35 or section 3582(c)).

This is not a controversial point. Indeed, the government explicitly admitted this in the *Higgs* matter on appeal before another panel of this Court. There, the government sought to modify the final judgment and order setting forth the procedures for carrying out Mr. Higgs's federal death sentence. That judgment, which was entered in 2001, specified that the execution was to be implemented in accordance with the laws of the state in which Mr. Higgs was sentenced—*i.e.*, Maryland. That state, however, abolished the death penalty in 2013, more than 12 years after Mr. Higgs was sentenced by the district court. In the absence of state law by which to carry out the sentence, the government asked the court in August 2020 to amend its 2001 judgment and order and direct that the execution be carried out in Indiana pursuant to Indiana law. *Higgs*, 2020 WL 7707165, at *1.

But upon being confronted with unambiguous law that a criminal sentence may not be modified by a district court except in limited circumstances—none of which applied—the government relented. As the district court remarked, "the Government put forth a 19-page reply, *conceding* for the first time *that the Court*

16

*indeed lacked the authority to amend the judgment.*"  *See Higgs*, 2020 WL

7707165, at *3 (emphasis added).[8]

It is axiomatic that a judgment rendered by a court lacking jurisdiction is

void.  *See, e.g.*, *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 608-09 (1990).

Consequently, because the district court lacked jurisdiction to modify Mr.

Johnson's original Judgment and Order, its 2005 orders purporting to do so are—

and were—a legal nullity.

> **C.    The district court's conclusion that the 1996 execution order is severable from the criminal judgment is erroneous.**

The district court held that the 2005 orders did not modify the criminal

judgment because they only modified the means by which the sentence is to be

implemented.  J.A.135.  But that reasoning is plainly foreclosed by *Jones*, which

makes no such distinction.  If a court cannot amend the terms by which a fine is

collected without running afoul of the prohibition against amending criminal

---

[8] The government's current argument in *Higgs* is that the court had the authority to enter the requested sentencing order because of a specific provision contained in 18 U.S.C. § 3596(a), which provides in pertinent part: "If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law."  Whatever the merits of that argument, there is no analogous statute that authorized the district court in Mr. Johnson's case to vacate the prior sentencing order and amend the judgment with the provisions set out in the 2005 sentencing order.

judgments, *Jones*, 238 F.3d at 272, surely it cannot change the terms by which a death sentence is carried out.

Additionally, the 2005 execution order stated that it was being made "[p]ursuant to the imposition of the sentence of death that was handed down by the jury on February 16, 1993," J.A.84. The order, by its own terms, plainly sought to modify the original 1993 judgment itself.

Moreover, the government requested an alteration to what was unambiguously part of Mr. Johnson's death sentence—the requirement that it be carried out at a Virginia correctional facility in the manner prescribed by Virginia law. Again, if the addition of a one-dollar fine is sufficiently meaningful to constitute an impermissible change in sentence, *Berman*, 302 U.S. at 212–14, then a change in the law governing the manner of execution and the place where it is to be carried out is as well.

Implicit in the district court's denial is the notion that the 1996 execution order is somehow severable from the judgment. This is mistaken. In fact, the Court's 1993 judgment became complete and final only when, pursuant to this Court's remand order, it "enter[ed] appropriate orders for the executions in accordance with regulation promulgated by the Attorney General." *Tipton*, 90

18

F.3d at 903.[9]  At that point, its 1996 order implementing the sentence merged with the 1993 judgment to become the Judgment and Order in this case.  *See Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence.  The sentence is the judgment."); *Parr v. United States*, 351 U.S. 513, 518 (1956); *accord Burton v. Stewart*, 549 U.S. 147, 156 (2007) (per curiam).  *See also Higgs*, 2020 WL 7707165, at *4 n.2 (rejecting the argument that "the relevant portion of the written Judgment and Order, including the statutory references and procedural directives, is not in fact part of the sentence," finding it to be "wholly unpersuasive, both as a practical matter and in light of the Supreme Court and Fourth Circuit precedent described herein.") (citing *Berman*, 302 U.S. at 212).

Indeed, the judgment could not have been final at the conclusion of the 1993 sentencing hearing because it was *unenforceable* until an appropriate order was entered alongside it.  *See* J.A.90-91 (district court noting that judgment could not be given effect unless and until it received appropriate instructions from this Court about its authority to enter an order authorizing the government to implement the death sentence).  Following the entry of the initial 1993 judgment, both parties elected to appeal, and the Fourth Circuit disposed of their claims.  The parties' right of appeal therefore culminated in the 1996 order, which the Fourth Circuit

---

[9] Indeed, the district court indicated at the 1993 sentencing hearing that it would have otherwise entered the sentencing order at that time but for its ruling that it lacked the authority to do so.  J.A.90-91.

19

directed the district court to enter upon its review of (among other claims) the sentencing issue. Accordingly, the judgment was not "final," with preclusive effect to further amendments, until the 1996 order resolved the issues appealed by the parties. *See United States v. Martin*, 913 F.2d 1172, 1177 (6th Cir. 1990).

**D.      The district court's reliance on Rule 35 and § 3582 in denying Mr. Johnson's motion is misplaced.**

The district court ruled that it was without authority to grant Mr. Johnson's request and vacate its 2005 orders because the motion does not come within the ambit of Rule 35 and § 3582. J.A.59. Respectfully, this gets the analysis precisely backwards. Indeed, the fact that the court now recognizes that these provisions do not authorize vacatur of an execution order is exactly why its 2005 orders—which themselves were vacaturs of the 1996 execution order—are, and were, null and void. The court never had authority under Rule 35 and § 3582 to enter the 2005 orders in the first place, and it cannot rely on a Catch-22 to preserve those orders now.[10]

Indeed, the court never identifies the source of its authority to grant the government's 2005 request to modify the terms of the death sentence. Although it asserts that it "undoubtedly had subject-matter jurisdiction over this criminal

---

[10] The court's attempt to distinguish *Higgs* is similarly misplaced. J.A.59. Rather than apply the reasoning of that decision to determine whether it had authority to grant the government's request in 2005 to amend the terms of Mr. Johnson's death sentence, the district court instead holds that *Higgs* precludes it from considering Mr. Johnson's *current* motion. *Id.* This stands the relevant analysis on its head.

20

prosecution," that blanket assertion of authority runs headlong into this Court's well-established law that a district court simply cannot amend a criminal sentence, unless very narrow circumstances exist, which were not present here.

### E.      The "timeliness" objections are misplaced.

As the Supreme Court has explained, the term "jurisdiction" means "the courts' statutory or constitutional power to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998)). Because a challenge to a court's jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court." *Cotton*, 535 U.S. at 630. *See also Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented. … Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety."). Thus, contrary to the district court's suggestion, a challenge to a court's jurisdiction to issue an order can never be time-barred.

Here, the district court simply did not have jurisdiction to entertain the government's request that it modify the terms of Mr. Johnson's death sentence.

21

The law is clear that the only authority that provides a district court with the power to modify a criminal sentence is Rule 35(a) and 18 U.S.C. § 3582. Absent the applicability of either exception, a district court cannot modify a criminal sentence. Any such order is a legal nullity, and the order is void, because the court never had the power to enter it in the first place.  Nor can forfeiture of the parties or the passage of time retroactively confer jurisdiction on a court.

The district court's reliance on *Kentrick v. Ryan*, 540 U.S. 443 (2004), and *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015), is misplaced.  J.A.60-61. *Kentrick* concerned an entirely separate matter, whether Federal Bankruptcy Rules 4004 and 9006(b)(3) are properly categorized as "jurisdictional" or "claim-processing rules." 540 U.S. at 455. And *Taylor* merely stands for the proposition that a district court retains jurisdiction to determine *whether it has jurisdiction* to grant a motion for a sentence reduction pursuant to § 3582(c).  778 F.3d at 670.  It does not stand for the proposition that a court has jurisdiction to *grant* a motion under § 3582(c) if the request does not meet the bases established by the statute.

Most importantly, neither of these cases addresses the central legal principle at issue here: whether a district court can, absent an applicable exception, circumvent the prohibition on the amendment of a criminal sentence.  The district court's opinion does not adequately engage with the import of the controlling Fourth Circuit case on this issue, *Jones*, let alone explain how the holding in that

22

case squares with its determination that it had authority to grant the government's 2005 request to modify the terms of Mr. Johnson's death sentence.

Finally, the district court cited no authority for the proposition that a "statute of limitations" defense applies to the prohibition on the amendment of a criminal sentence. J.A.60 n.3. Its invocation of the prohibition on successive § 2255 motions is similarly misguided. J.A.60. The premise of this argument is that Mr. Johnson lost his chance to point out that the 2005 orders were void by failing to file a claim pursuant to § 2255 motion. But such a vehicle is unnecessary here. Indeed, as the court itself conceded, "any action by a court without subject-matter jurisdiction is 'ultra vires' and therefore void." J.A.61 (quoting *United States v. Hartwell*, 448 F.3d 707, 715 (4th Cir. 2006)).

Contrary to the district court's suggestion, it does not take the challenge of a party to deprive an "ultra vires" and "void" order of its legal effect; it is a nullity of its own accord, by virtue of the fact that the court lacked the authority to enter it in the first place. The 1996 order therefore remains the sentencing order in this case.

## Conclusion

For the foregoing reasons, Mr. Johnson respectfully requests that the district court's order denying his motion to vacate the 2005 orders be reversed, and furthermore that the district court's 2005 sentencing orders (J.A.82 & J.A.84) be vacated as null and void.

23

Respectfully submitted,

Date: January 12, 2021

/s/ David E. Carney
David E. Carney, VA Bar # 43914
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7246
Fax: (202) 661-8295
Email: david.carney@skadden.com

24

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully suggests that given the exceptionally straightforward law prohibiting the amendment of a criminal judgment—except in limited circumstances not present here—oral argument is not necessary to expeditiously and properly resolve this case.

## CERTIFICATE OF COMPLIANCE

1. This Corrected Brief has been prepared using Microsoft Word 2016 software, Times New Roman font, 14-point proportional type size.

2. EXCLUSIVE of the corporate disclosure statement, table of contents, table of authorities, statement with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains no more than 13,000 words, specifically 5,807 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

Date: January 12, 2021

/s/ David E. Carney
David E. Carney, VA Bar # 43914
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7246
Fax: (202) 661-8295
Email: david.carney@skadden.com

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of January 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to all parties and counsel included on the Court's Electronic Mail notice list.

/s/ David E. Carney
David E. Carney, VA Bar # 43914
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7246
Fax: (202) 661-8295
Email: david.carney@skadden.com

27