IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 21-3

———————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

COREY JOHNSON,

*Appellant*.

———————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Richmond
*The Honorable David J. Novak, District Judge*

———————————

BRIEF OF THE UNITED STATES

———————————

G. Zachary Terwilliger
United States Attorney

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys
Eastern District of Virginia
919 East Main Street, Suite 1900
Richmond, Virginia 23219

*Attorneys for the United States of America*

## Table of Contents

**Page**

Table of Authorities ........................................................................... ii

Introduction ..................................................................................... 1

Issues Presented ............................................................................... 2

Statement of the Case ....................................................................... 3

  A. Johnson's conviction, sentence, and the government's cross-appeal ...................................................................................... 3

  B. The district court's 1996 order. ................................................ 4

  C. The district court's 2005 order. ............................................... 4

  D. Johnson's motion to vacate the district court's 2005 order. ........ 5

Summary of Argument ...................................................................... 6

Argument ......................................................................................... 6

  A. The district court correctly held that Johnson's challenge is time-barred. ........................................................................ 6

  B. The district court correctly held that its 2005 order did not amend the criminal judgment. ............................................... 11

Conclusion ....................................................................................... 15

Statement Regarding Oral Argument ................................................. 16

Certificate of Compliance ................................................................. 16

i

## Table of Authorities

**Page**

**Cases**

*Barr v. Lee*, 140 S. Ct. 2590 (2020)........................................................2

*Buckley v. Precythe*, 139 S. Ct. 1112 (2019) .............................................8

*Chicot County Drainage District v. Baxter State Bank*,
      308 U.S. 371 (1940)..............................................................11

*Henderson v. Shinseki*, 562 U.S. 428 (2011) .............................................9

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
      456 U.S. 694 (1982)..............................................................11

*Kontrick v. Ryan*, 540 U.S. 443 (2004)................................................. 9-10

*Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009).........................10

*United States v. Higgs*, 2020 WL 7707165 (D. Md. Dec. 29, 2020)...................8, 14

*United States v. Jones*, 283 F.3d 271 (4th Cir. 2001) ..............................11

*United States v. Little*, 392 F.3d 671(4th Cir. 2004).................................13

*United States v. May*, 855 F.3d 27 (4th Cir. 2017) ....................................10

*United States v. Roane*, 378 F.3d 382 (4th Cir. 2004)..................................4

*United States v. Sanchez*, 891 F.3d 535 (4th Cir. 2018). ...................... 7-8

*United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996)....................... 3-4, 12

**Statutes**

18 U.S.C. § 3582(c)(2)...............................................................5, 10

21 U.S.C. § 848(e) ...........................................................................3

28 U.S.C. § 2255 ........................................................... 7, 9-10

**Rules and Other Authorites**

Fed. R. Crim. P. 35...........................................................................5, 13

28 C.F.R. § 26.3 ...............................................................................3

**Introduction**

Appellant Corey Johnson was convicted in 1993 of murdering eight people. He received a death sentence on seven of these convictions. In 1996, this Court affirmed his convictions and sentences on direct appeal, and in 2004 on collateral review. After filing three stay applications with this Court within approximately a week of his execution date—and hours after this Court denied all of them—Johnson now files a new appeal attacking his sentence.

At 11:15 PM on Sunday, January 10, 2021, Johnson filed in the district court a "motion to vacate" an order that the district court entered in 2005 and that Johnson never appealed. According to Johnson's new filing, the district court lacked authority in 2005 under Federal Rule of Criminal Procedure 35(a) to amend an earlier order it had entered in 1996, specifying in certain respects how Johnson's death sentence would be carried out. The government responded to Johnson's new filing at midnight on January 12, 2021, and the district court denied Johnson's motion to vacate later that day. The district court made clear that its 2005 order did not—contrary to Johnson's argument—amend the judgment of conviction. It further held that even on Johnson's own terms, his challenge to the district court's purported amendment of its judgment was procedurally unsound and extremely late. Johnson

1

now appeals the district court's ruling.[1] Apparently seeking to avoid the high standards for a last-minute stay, *see, e.g.*, *Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020), Johnson simply requests an expedited ruling instead of filing a motion for a stay. But regardless of how his appeal is labeled, he seeks a last-minute intervention in his execution for a claim that he could have pursued a decade and a half ago.[2] This Court should reject that request.

### Issues Presented

1.      May a defendant wait a decade and a half to challenge an order that addresses the execution of his sentence?

2.      Did the district court's amendment of a post-judgment order in 2005 constitute an impermissible amendment of the judgment itself?

---

[1] Johnson noted his appeal on January 12, 2021, and around 10:00 PM that evening filed his opening brief. Johnson then filed a corrected brief at 12:04 AM on January 13. Due to the expedited nature of the case, the Court ordered the government to submit its response brief by 2:00 PM on January 13, 2021.

[2] On January 12, 2021, a district judge outside the Fourth Circuit entered a preliminary injunction prohibiting Johnson's January 14 execution on unrelated grounds. *See In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-145, Dkt. No. 395 (D.D.C. Jan. 12, 2021). The government immediately appealed the district court's order and on January 13, sought emergency relief from the D.C. Circuit. *See In re: FBOP Execution Protocol Cases*, 21-5004, ECF No. 1879763 (D.C. Cir. Jan. 13, 2021).

2

## Statement of the Case

### A.    Johnson's conviction, sentence, and the government's cross-appeal.[3]

On February 16, 1993, a jury sentenced Johnson to death for seven murders under 21 U.S.C. § 848(e)(1)(A). Thereafter, the district court imposed those death sentences and entered a judgment. But the court stayed the implementation of the death sentences because it concluded that "no federal statute provided authorization for the specific means of executing such sentences." *United States v. Tipton*, 90 F.3d 861, 901–02 (4th Cir. 1996), *cert. denied*, 520 U.S. 1253 (1997). Although federal regulations did provide for the method in which the sentence would be carried out, *id.* (citing 28 C.F.R. § 26.3), the court concluded that the regulations exceeded the government's authority. Thus, the court imposed the death sentences themselves, but "entered an order affirmatively staying the executions until such time as Congress provided specific authorization of means." *Id.* at 902.

This Court reversed in relevant part, holding that while Congress may "legislate the means of executing federal death sentences," the Executive Branch could address the means of execution through regulations. *Id.* This Court therefore remanded the case to the district court "with instructions to enter appropriate orders

---

[3] Due to the compressed timeframe and accelerated briefing schedule, the government recounts only the procedural history pertinent to the instant appeal.

3

for the executions in accordance with regulation promulgated by the Attorney General." *Id*. at 903.

### B.     The district court's 1996 order.

On remand, the district court entered an order on November 22, 1996, addressing the implementation of Johnson's death sentence. The court styled that order as an "order of execution"—not as a modification of the underlying criminal judgment of conviction. The order provided that Johnson be released "to the custody of a U.S. Marshal who shall supervise implementation of the sentence of death, in the manner prescribed by the law of the Commonwealth of Virginia[.]" (ECF No. 107-6 at 1.) The order also specified that the U.S. Marshal "charged with supervising the implementation of the sentence of death may use appropriate State or local facilitates and services of an appropriate State of local official for the purposes[.]" (*Id*.)

### C.     The district court's 2005 order.

In 2005, following the conclusion of post-conviction litigation, *see United States v. Roane*, 378 F.3d 382, 396–407 (4th Cir. 2004), *cert. denied*, 546 U.S. 810 (2005), the government sought the vacatur of the court's 1996 execution order. As the government explained, the 1996 order directed the government to carry out the execution at "the State correctional facility housing the death chamber" and "in the manner prescribed by the law of the Commonwealth of Virginia." (ECF No. 107-8

4

at 3.) In 1996, the government did not have a facility for carrying out the death penalty. (*Id.*) The government explained that, because it had since built such a facility at Terre Haute Federal Correctional Institute in Indiana, there was "no continuing reason" for the court "to designate 'the State facility housing the death chamber' as the place where [Johnson's] execution should be carried out." (*Id.* at 4.) In opposing the government's motion, Johnson "did not challenge the Court's jurisdiction or suggest in any way that the Court lacked the authority" to grant the requested relief. (ECF No. 111 at 2.)

On November 17, 2005, the district court granted the government's motion and vacated its 1996 order. (ECF No. 107-2.) The court followed with an order directing that "the sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons[.]" (ECF No. 107-3.) Johnson did not appeal.

**D.     Johnson's motion to vacate the district court's 2005 order.**

Fifteen years later, at 11:15 PM on January 10, 2021, four days before his scheduled execution, Johnson filed a "motion to vacate" in the district court. (ECF No. 107.) There, he argued that the district court's 2005 amendment to its 1996 order specifying how his death sentence would be carried out violated Federal Rule of Criminal Procedure 35(a) and 18 U.S.C. § 3582(c), and that the court had acted without jurisdiction in issuing it. (*Id.*) The next day, at 10:54 AM, the district court

ordered the government to respond by 8:00 AM on January 12, 2021. (ECF No. 108.)

The district court also noted that "[d]ue to the expedited nature of this issue [it]

intend[ed] to rule on the Defendant's motion without a reply[.]" (*Id.*) The

government responded in opposition at midnight on January 12. (ECF No. 110.) At

12:51 PM on January 12, the district court denied the defendant's motion to vacate.

(ECF No. 111.)

This appeal followed.

### Summary of Argument

The district court correctly rejected Johnson's motion to vacate the 2005

order as untimely and meritless. Johnson waited 15 years, until the eve of execution,

to file the motion—long after the deadline for any procedurally valid challenge had

passed. In any event, as the district court correctly recognized, its post-judgment

order—entered at the direction of this Court following a successful government

appeal of an order ancillary to the judgment that prohibited implementation of the

death sentence—was not part of the judgment itself, and was validly subject to

modification. This Court should affirm the denial of Johnson's motion to vacate.

### Argument

**A.     The district court correctly held that Johnson's challenge
        is time-barred.**

As the district court correctly held, Johnson's claim is procedurally improper

and time-barred. Even assuming for the sake of argument that the 1996 order formed

part of Johnson's sentence, any claim that the 2005 order improperly modified his sentence comes approximately fifteen years too late.

As this Court recently explained, "Congress has provided a detailed roadmap to guide federal defendants who wish to contest the validity of their convictions or sentences," and "[u]nless a conviction or sentence is successfully challenged and overturned through this process, it is valid, and it stands." *United States v. Sanchez*, 891 F.3d 535, 538 (4th Cir. 2018). First, and most obviously, Johnson could have raised his present objections in 2005, when the government moved for the entry of the order he now challenges. Yet "in opposing the Government's motion, [Johnson] did not . . . suggest in any way that the Court lacked the authority to enter new execution orders." (ECF No. 111 at 2.) Second, he could have filed an appeal in this Court, followed by a petition for a writ of certiorari in the Supreme Court. Yet he "did not appeal" within the applicable 14-day deadline. (*Id.*) Third, he could have sought to file a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Indeed, his own theory of the case—that 1996 order formed part of the sentence and that the 2005 order improperly modified it—would suggest that very mechanism. But § 2255 is subject to "[a] 1-year period of limitation." 28 U.S.C. § 2255(f). As the district court explained, Johnson filed his present motion more than "fifteen years" after the statute of limitations "began to run," long after the one-year period expired. (*Id*. at 5.) In short, the deadlines for the lawful avenues for

7

challenging Johnson's sentence have all expired. That means that the sentence "is valid, and it stands." *Sanchez*, 891 F.3d at 538. "Any holding to the contrary would [] only skirt the efforts of Congress to provide a comprehensive route for challenging sentences[.]" *Id.*

Those deadlines amply justify the rejection of Johnson's claim, but the claim also is untimely under equitable principles governing last-minute efforts to halt executions. The Supreme Court has emphasized that such last-minute efforts "should be the extreme exception, not the norm," and that "'the last-minute nature of an application' that 'could have been brought' earlier, or 'an applicant's attempt at manipulation,' 'may be grounds for denial of a stay.'" *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019). In this case, the government notified Johnson of his execution date on November 20, 2020, but Johnson did not raise his present objections at that time. (ECF No. 111 at 2.) Johnson asserts (ECF No. 107 at 1 n.1) that his counsel "became aware" of "this issue" after the "recent decision" in *United States v. Higgs*, No. 98-cr-520, 2020 WL 7707165 (D. Md. Dec. 29, 2020), but that does not excuse him for having failed to discover the "issue" himself before then. And even if it were a valid excuse for failing to challenge the 2005 order for a decade and a half, Johnson still unduly delayed in raising his present objections. Johnson waited until January 10, 2021—more than fifteen years after the entry of the challenged order, more than seven weeks after the scheduling of his execution, nearly two weeks after *Higgs*, and

8

just four days before the scheduled execution. Further, in an apparent effort to circumvent the Supreme Court's case law on last-minute stays of executions, he has sought expedited resolution of his appeal on the merits, instead of seeking a stay. And he has done all this as part of a "barrage of last-minute claims," whose "very numerosity . . . betrays a manipulative intention to circumvent . . . the Supreme Court's warnings against procedural gamesmanship." Order, *United States v. Johnson*, 20-15, ECF No. 26 at 3 (4th Cir. Jan. 12, 2021) (opinion of Wilkinson, J.). This Court should not reward such tactics.

Johnson argues that the district court lacked jurisdiction to enter the 2005 order and that, as a result, he may challenge it at any time, irrespective of § 2255's statute of limitations or other applicable deadlines. That contention errs in both premise and conclusion. To start, the purported defect in the 2005 order is not "jurisdictional." "Jurisdiction . . . is a word of many, too many, meanings." *Kontrick* v. *Ryan*, 540 U.S. 443, 454 (2004). Endeavoring "to bring some discipline to the use of the term," the Supreme Court has emphasized that "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Henderson* v. *Shinseki*, 562 U.S. 428, 435 (2011). Applying that "strict definition," a court should treat a rule as jurisdictional only if the statute contains a "'clear' indication that Congress wanted the rule to be jurisdictional." *Id*. (citation omitted). Here, Johnson identifies no basis for

9

concluding that the provisions he invokes—18 U.S.C. 3582(c) and Fed. R. Crim. P. 35—contain a clear indication that they pose *jurisdictional* obstacles to the 2005 order. Accordingly, even accepting for the sake of argument Johnson's assertion that the 2005 order involved a belated reconsideration of a sentencing determination—an inaccurate description, for the reasons given below—Johnson fails to identify a jurisdictional limit that was transgressed in 2005. *See, e.g.*, *United States v. May*, 855 F.3d 271, 274–75 (4th Cir. 2017).

In addition, even if Johnson's objections could be labeled "jurisdictional," they would still be untimely. Section 2255 provides the appropriate route for challenges to jurisdictional defects in criminal cases after the conviction has become final; it explicitly states that a prisoner may move to vacate the sentence. As already discussed, however, § 2255 provides a one-year statute of limitations for such challenges; Johnson has brought his current claim long after that limitations period expired. Johnson relies on the general principle that a court may consider jurisdictional objections at any time, but the Supreme Court has repeatedly made clear that the principle applies only on direct review before finality, not on collateral review after finality. *See, e.g.*, *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 154 (2009) ("[T]he need for finality forbids a court … to tunnel back for the purpose of reassessing prior jurisdiction.") (internal quotation marks and citation omitted); *Kontrick*, 540 U.S. at 455 n.9 ("Even subject-matter jurisdiction . . . may not be

10

attacked collaterally."); *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment."); *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 376 (1940) ("[Jurisdictional determinations], while open to direct review, may not be assailed collaterally"). Johnson's repeated reliance on *United States v. Jones*, 283 F.3d 271 (4th Cir. 2001), is misplaced: That case involved an amendment to the criminal judgment itself rather than an amendment to an ancillary order, *see* 238 F.3d at 272–73, and in any event, that case involved a timely direct appeal from the amended judgment, not an untimely collateral attack.

In the final analysis, Johnson himself "recognize[s] that this issue likely should have been addressed sooner." (ECF No. 107 at 1 n.1). Indeed it should. "[A]t some point allowing these proceedings to travel further along this indefinite and interminable road brings the rule of law into disrepute." Order, *United States v. Johnson*, 20-15, ECF No. 26 at 4 (4th Cir. Jan. 12, 2021) (opinion of Wilkinson, J.).

### B. The district court correctly held that its 2005 order did not amend the criminal judgment.

Johnson's claim also fails on the merits. The gist of Johnson's argument, both below and on appeal, is that the district court lacked authority to amend its 1996 order directing the implementation of his death sentence. In order to lodge this challenge, Johnson repeatedly refers to the district court's 2005 order as an

11

amendment to the judgment of conviction. And, as the argument goes, the district court lacked the power in 2005 to amend its earlier judgment due to the principles of finality governing criminal judgments.

Johnson's argument fails for the threshold reason that the district court's 2005 order modified only its earlier order pertaining to the implementation of his sentence, not the judgment of conviction itself. Every aspect of the district court's rulings addressing the implementation of the death sentences demonstrated that they were ancillary to the judgment of conviction. The district court entered the judgment of conviction with the death sentences, but stayed that judgment of conviction on the theory that no lawful means existed for carrying out the judgment. This Court vacated that order, instructing the district court to "enter appropriate *orders for the executions*." *Tipton*, 90 F.3d at 902 (emphasis added). This was the appropriate relief for "the Government's cross-appeal from the district court's order staying execution." *Id*. at 903. That cross-appeal did not challenge the underlying judgment. And on remand, the district court did exactly what it was instructed to do: "enter appropriate orders" of execution.

Contrary to Johnson's arguments, the district court's 1996 order is styled not as any modification of the judgment, but as an "order of execution." And the district court later modified that order, again styling the updated order as an "order," not as a judgment of conviction. It would be difficult to identify a matter that more clearly

12

counts as addressing the execution of a sentence than an order specifying the way in which a death sentence would be carried out. Just as a designation of where an inmate will serve his sentence deals with the execution of a sentence, so too does an order specifying how a death sentence will be carried out. And contrary to Johnson's argument, Fed. R. Crim. P. 35 does not govern the execution of a sentence. *See, e.g.*, *United States v. Little*, 392 F.3d 671, 679–80 (4th Cir. 2004) (Rule 35 does not govern challenge to how sentencing credit is calculated, an issue dealing with the execution of a sentence).

Johnson's own motion below effectively conceded the ancillary nature of the orders at issue. As he stated: "The Court thereafter entered the judgment imposing a sentence of death on Counts 8, 11, 17, 18, 19, 24, and 25. See Ex. 4 (ECF No. 593). Per its oral ruling, however, it did not include *an order for implementing* the death sentence." (ECF No. 107 at 2) (emphasis added). Johnson asserts that the judgment was not complete until the further orders that provided the procedures for executing the sentence. But the sentence here was the death sentence, which was complete and final without further orders. Indeed, that explains why a final judgment validly existed for Johnson's own direct appeal to this Court in *Tipton*.

In accord with Johnson's own description in his motion to vacate, the district court in denying relief correctly recognized that the 2005 order "did not modify the Judgment. Instead, it modified the orders directing how the judgment would be

13

implemented." (ECF No. 111 at 3.) Johnson offers no reason on appeal to question the district court's findings, and the district court's findings match exactly how the district court and this Court have consistently described the prior orders—as orders that are separate from the judgment and that address the execution of the sentence. Given that Johnson's argument is premised on a theory that the district court's 2005 order amended the criminal judgment, Johnson's failure on this score is fatal to his appeal. As the district court recognized, "[t]his fact forecloses Defendant's arguments, as he grounds his Motion in the finality of criminal *judgments*." (*Id*.) This Court should affirm for this reason as well.[4]

---

[4] Johnson's reliance on *United States v. Higgs*, 2020 WL 7707165 (D. Md. Dec. 29, 2020), is misplaced. Although the government disagrees with that ruling and has appealed it, *Higgs* is readily distinguishable. It does not address the series of orders like those entered in this case after a criminal judgment was entered, and it does not involve a case where a defendant seeks to attack an order entered more than a decade and a half ago.

14

## Conclusion

For the reasons explained above, this Court should affirm the district court's

denial of Johnson's motion to vacate.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

/s/

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys

15

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 3,428 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/
_____

Joseph Attias
Assistant United States Attorney

16