**EXECUTION SCHEDULED FOR JANUARY 14, 2021**

No. 21-3

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff – Appellee,**

**v.**

**COREY JOHNSON, A/K/A O, A/K/A CO,**

**Defendant – Appellant.**

_____

**CAPITAL CASE**

**EMERGENCY MOTION OF COREY JOHNSON FOR STAY OF
EXECUTION PENDING CONSIDERATION AND DISPOSITION OF
APPEAL**

_____

Donald P. Salzman
Jonathan Marcus
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Appellant*

## **TABLE OF CONTENTS**

Page

BACKGROUND ..........................................................................................................2

I.     MR. JOHNSON HAS A STRONG LIKELIHOOD OF SHOWING
       THAT THE DISTRICT COURT LACKED JURISDICTION TO
       AMEND HIS DEATH SENTENCE. ............................................................6

II.    MR. JOHNSON'S IMMINENT EXECUTION RISKS MANIFEST
       AND IRREPARABLE HARM. ...................................................................13

III.   THE GOVERNMENT WILL NOT SUFFER ANY UNFAIR
       PREJUDICE IF THE COURT ENTERS A STAY.......................................14

IV.    THE PUBLIC INTEREST FAVORS A STAY. ..........................................15

V.     ANY DELAY IN BRINGING THIS MOTION WAS NEITHER
       UNDUE NOR RELEVANT TO THE COURT'S DISPOSITION OF
       THE QUESTION ON APPEAL..................................................................16

CONCLUSION .......................................................................................................16

i

Appellant Corey Johnson respectfully requests a stay of his execution, set for 6:00 p.m. today, pending this Court's consideration of his appeal of the denial of his motion to vacate the November 2005 amended sentencing order.  Given the nature of the issue before the Court, a merits decision will not vacate Mr. Johnson's death sentence, but it will determine the significant issue of the manner in which the execution is carried out.[1]

The Bureau of Prisons intends to execute Mr. Johnson this evening pursuant to a 2005 sentencing order that purported to modify the original order implementing his death sentence.  That 2005 order was entered by a court without subject-matter jurisdiction, and was therefore void *ab initio* and unenforceable.

The law governing this issue is not novel.  This Court has long recognized a prohibition on the amendment of criminal sentences absent the existence of limited exceptions, which are not present here.  Briefing is complete and oral argument has been waived pursuant to the parties' agreement to an expedited schedule.  All that remains is for this Court to issue its decision on the merits. Mr. Johnson respectfully requests a brief stay of his execution until the Court issues that

---

[1]   Counsel advised the government of its intent to file this Motion, and the government expressed its intention to oppose the Motion.  Mr. Johnson did not file for a stay in the district court because Rule 8 of the Federal Rules of Appellate Procedure is inapplicable here and, even if applicable, in addition to the exigencies, seeking a stay in the district court would be futile, excusing any obligation.

1

decision.  The Court yesterday granted a stay of execution on a closely similar issue in *United States v. Higgs*, No. 20-18 (Jan. 13, 2021), ECF No. 38.

## BACKGROUND

The district court formally sentenced Mr. Johnson to death on June 1, 1993. At the sentencing hearing, however, the court held that it denied a pending defense motion to bar Mr. Johnson's execution due to the absence of a congressionally authorized execution method, and did, in fact, impose a death sentence.  However, the court refrained from entering the requisite order authorizing the government to implement the sentence because it ruled that the Attorney General's regulations governing executions were *ultra vires*, and therefore the court lacked authority to do so:

> I will not exclude death as a punishment in fashioning the sentences that I will impose this morning.  I will impose a death penalty as part of any sentence I announce this morning.
> At the same time, I specifically find that the Attorney General's regulation establishing the procedures for executing federal death sentences is ultra vires and with no legal force or effect. . . .
> [T]he sentences of death that I impose cannot be implemented unless and until Congress provides a method for implementation of the death sentence.  Of course, if a higher court were to consider the matter and determine that I am in error about this, I would follow their direction and outline a method of execution.

J.A.90-91.

Upon the parties' cross-appeals of Mr. Johnson's convictions and sentence, this Court reversed the district court's ruling that the execution regulations were

*ultra vires* and remanded the case "with instructions to enter appropriate orders for the executions in accordance with regulation promulgated by the Attorney General." *United States v. Tipton*, 90 F.3d 861, 903 (4th Cir. 1996).

On November 22, 1996, the district court entered the requisite order. J.A. 109. It stated, in pertinent part:

> Pursuant to instructions from the United States Court of Appeals for the Fourth Circuit to enter an order of execution in accordance with regulations promulgated by the Attorney General, it is hereby ORDERED that:
>
> 1. The Attorney General shall release Cory Johnson . . . to the custody of a United States Marshal who shall supervise implementation of the sentence of death in the manner prescribed by the law of the Commonwealth of Virginia, Va. Code Ann. §§ 53.1-232–236 (Michie 1994 & Supp. 1996);
>
> 2. The United States Marshal charged with supervising the implementation of the sentence of death, may use appropriate State or local facilities and services of an appropriate State or local official for the purpose; and shall pay the costs thereof in an amount approved by the Attorney General; [and]
>
> . . .
>
> 6. Not less than four (4) days before the time fixed in this Order for the execution of the sentence, the United States Marshal, in conjunction with the Director of the Virginia Department of Corrections, shall cause Cory Johnson . . . to be conveyed to the State correctional facility housing the death chamber[.]

J.A.109. The final judgment and order set Mr. Johnson's execution date for March 20, 1997. *Id.*

3

Upon Mr. Johnson's motion, the district court stayed Mr. Johnson's execution while he pursued habeas relief pursuant to 28 U.S.C. § 2255. J.A.112. That relief was ultimately denied, culminating in a denial of certiorari by the Supreme Court. The government thereafter sought, in a single October 2005 filing, to lift the stay of execution and to modify the terms of the original death sentence. *See* J.A.114. Notably, the motion did not identify any authority that conferred subject-matter jurisdiction on the court to modify the death sentence. It merely argued that since the government had built its own death chamber in the intervening years at a federal prison in Terre Haute, Indiana, there was "no continuing reason for th[e District] Court to designate 'the State facility housing the death chamber' as the place where the petitioners' executions should be carried out" and "no reason" for the execution to proceed as specified by Virginia law. J.A.117-119.

The district court granted the government's motion on November 17, 2005, and issued an order modifying its original sentence as the government requested. It stated in pertinent part:

> Pursuant to the imposition of the sentence of death that was handed down by the jury on February 16, 1993, [it] is hereby ORDERED that:
>
> 1. The sentence of death shall be executed by a United States Marshal designated by the United States Marshals Service;
> . . .
> 3. The sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons; [and]

4

4.  Cory Johnson shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence . . . .

J.A.84.

Shortly thereafter, in 2006, the government was enjoined by the United States District Court for the District of Columbia from carrying out Mr. Johnson's execution pending a challenge to the government's lethal injection protocol. *See* J.A.134 (recounting procedural history).  That injunction was vacated on September 20, 2020.  J.A.139.

On November 20, 2020, the Bureau of Prisons issued a notice to Mr. Johnson "that a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on June 1, 1993." J.A.130.  The government intends to implement Mr. Johnson's death sentence at 6:00 p.m. today, according to the terms of the November 2005 order—in Indiana, without regard to Virginia law. *Id.*  Mr. Johnson filed a motion in the district court on January 10, 2021, arguing that the 2005 order was void for lack of jurisdiction, and that the execution must proceed according to the original judgment and order.  J.A.69.  The district court denied that motion on January 12, 2021.  J.A.56.

## STANDARD OF REVIEW

Under the "traditional" standard for issuing a stay, the court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely

5

to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted). "The first two factors . . . are the most critical"; it is necessary that the movant make "a strong showing that he is likely to succeed on the merits." *Id.* at 434 (citation omitted).

## ARGUMENT

As confirmed by the District of Maryland's decision in *United States v. Higgs*, No. 98-cr-520, 2020 WL 7707165 (D. Md. Dec. 29, 2020), now pending oral argument before this Court later this month, *see* No. 20-18 (4th Cir.), Mr. Johnson has a strong likelihood of prevailing on the merits of his case, and his impending execution threatens irreparable harm without a stay. The relevant equitable considerations all urge a stay, and the Court should grant one here.

## I.     MR. JOHNSON HAS A STRONG LIKELIHOOD OF SHOWING THAT THE DISTRICT COURT LACKED JURISDICTION TO AMEND HIS DEATH SENTENCE.

As Mr. Johnson's opening and reply briefs explain in detail, Mr. Johnson is likely to prevail on his claim that the district court lacked jurisdiction to amend Mr. Johnson's death sentence, and thus that its 2005 sentencing order was void *ab initio* and unenforceable. The law on this matter is unambiguous.

6

A district court cannot modify a criminal sentence except under limited circumstances, none of which is present here. *Dillon v. United States*, 560 U.S. 817, 824 (2010) (holding that a "'judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances" (alteration in original)) (quoting 18 U.S.C. § 3582(b)); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020) ("Generally, sentences may not be modified once imposed."). This point is so obvious that even at the time this Court decided the controlling case on this issue, the government conceded it. *See United States v. Jones*. 238 F.3d 271, 272 (4th Cir. 2001) ("The Government concedes, and we agree, that the district court lacked authority to amend Jones' judgment. Although there are circumstances under which a district court may modify or correct a criminal judgment order, none of them authorized the district court to take this action based solely on a subsequent change in case law.").

There are only two sources of subject-matter jurisdiction that would have allowed the district court to grant the government's 2005 request: Rule 35 and 18 U.S.C. § 3582. *United States v. Griffin*, 60 F.3d 826, 1995 WL 417628, at *2 (4th Cir. 1995) (unpublished table decision); *accord United States v. Fraley*, 988 F.2d 4, 6 (4th Cir. 1993). Neither provision applied here. The government has never argued otherwise. Nor did the district court—then or now—claim it did. In fact,

7

the district court has never identified—then or now—its jurisdiction to grant the request. Thus, the 2005 orders modifying the terms of Mr. Johnson's death sentence are, and were, void.

The district court held that its 2005 order did not run afoul of the prohibition on amending criminal sentences because it only modified the means by which the sentence is to be implemented. J.A.135. But that reasoning is plainly foreclosed by *Jones*, where this Court held that a district court lacked authority to amend the defendant's judgment to require immediate payment of a $10,000 fine imposed four years earlier, even though the amendment sought to bring the sentence into compliance with subsequent case law. 238 F.3d at 272–73. Notably, the amendment did not change the sentence that was imposed; the amount of the fine stayed the same. *See id.* Rather, it changed the *implementation* of the sentence. The terms of the original judgment stated that the fine would be paid in installments, while the amendment required that that the fine "shall be due and payable immediately." *Id.* If a district cannot modify the means by which the government collects money on a fine, it follows *a fortiori* that it cannot modify the means by which the government carries out a death sentence. *See also United States v. Lightner*, 266 F. App'x 240, 242 (4th Cir. 2008) (holding that district court's subsequent order "intended to clarify the language of the sentencing court and to enforce the sentencing court's original intent … constituted an unauthorized

8

amendment to the judgment … 'through the back door,'" and invalidating amendment).

Similarly, the district court's suggestion—that the 1996 sentencing entered upon remand is severable from the 1993 judgment—is incorrect. The 1996 order ordinarily would have issued at the 1993 sentencing hearing and merged with the judgment at that time to constitute the final judgment and order, but for the district court's legal ruling that the Attorney General's execution regulations were *ultra vires*. The fact that the sentencing order was entered at the direction of this Circuit, after reversing that ruling, does not make it any more severable from the judgment than if it had been entered at the time of the 1993 sentencing hearing itself. Indeed, the very reason the government took a cross-appeal was because, absent the entry of that order, the judgment was incomplete and the government could not lawfully carry out Mr. Johnson's death sentence. *See also United States Higgs*, No. 98-cr-5202020 WL 7707165, at *4 n.2 (D. Md. Dec. 29, 2020) (rejecting argument that "the relevant portion of the written Judgment and Order, including the statutory references and procedural directives, is not in fact part of the sentence," finding it to be "wholly unpersuasive, both as a practical matter and in light of the Supreme Court and Fourth Circuit precedent described herein.") (citing *Berman v. United States*, 302 U.S. at 211, 212 (1937)).

9

The district court's conclusion that Mr. Johnson's motion was untimely is also incorrect. Challenges to a court's jurisdiction can never be forfeited, waived, or time-barred. In fact, once such a challenge is raised, a court must consider it. *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Nor does the lack of a challenge to the orders on direct appeal or under 28 U.S.C. § 2255 cure the *jurisdictional defect* of those orders, which constitutes an independent reason why the orders are void. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); *In re Visteon Corp*, 579 F. App'x 121, 127 (3d Cr. 2014).

As Mr. Johnson has argued, the district court lacked jurisdiction to enter the 2005 orders, and they were therefore a legal nullity. Stated differently, they were void *ab initio* and unenforceable. *See Hooker v. Boles*, 346 F.2d 285, 286 (4th Cir. 1965) ("[N]o authority need be cited for the proposition that, when a court lacks jurisdiction, any judgment rendered by it is void and unenforceable."); *Fed. Sav. & Loan Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515, 521 (7th Cir. 1980) (finding it "settled" that where "court lacks jurisdiction to adjudicate the principal matter, its orders purporting to grant the [requested relief] are likewise beyond its jurisdiction and as such are void ab initio"); *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 145–46 (2d Cir. 2019) (holding that because district court lacked subject-matter jurisdiction, the "orders that it issued in the enforcement proceeding

10

were void ab initio"); *see also* 20 Am. Jur. 2d Courts § 63 (Nov. 2020 Update) ("[W]hen a court decides a matter without jurisdiction, the whole proceeding is as if it had never happened.").

The authorities cited by the government are irrelevant to that simple proposition. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004), and *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) do not address the clear law of this Circuit: a criminal sentence may not be amended, unless the criteria set forth under Rule 35 or § 3582 are met. That is the jurisdictional limit that this Court has set on the district courts' power to modify a criminal sentence. The government's suggestion that these provisions should be treated as "mandatory claim-processing rules" rather than "jurisdictional rules" finds no support in *Kontrick* or *Henderson*, or in this Circuit's well-established law prohibiting amendments to criminal sentences.

The government's citation to *United States v. May*, 855 F.3d 271 (4th Cir. 2017), is also unavailing. That case addresses whether a prisoner may seek reconsideration of a district court's *sua sponte* order denying a sentence reduction pursuant to § 3582(c)(2). This Court ruled that "the implied prohibition on § 3582(c)(2)-based motions for reconsideration, as recognized in [*United States v.*] *Goodwyn*, [596 F.3d 233 (4th Cir. 2010)], is non-jurisdictional." *May*, 855 F.3d at 275. That case has no bearing here. Moreover, the government's implication—

11

that its 2005 request might have been cognizable under § 3582—is absurd: that provision governs requests for *reductions* in sentence. That was clearly not the relief requested by the government in 2005.

The government's reliance on *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009), and *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371 (1940), is also misplaced. These cases concerned the applicability of principles of res judicata to prevent collateral attacks on a civil bankruptcy judgment. They have no bearing on the jurisdictional limits of a court's authority to modify a criminal sentence.

Finally, the government's citation to *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982), is misleading. That case addresses an entirely distinct question: whether a party may expressly or impliedly consent to personal jurisdiction. It does not stand for the proposition that *subject-matter jurisdiction* can be waived.

The District Court's 2005 order was a groundless attempt to modify Mr. Johnson's original sentence, sought and issued purely for the government's convenience. Mr. Johnson has a strong chance of success on the merits of this appeal.

## II.    MR. JOHNSON'S IMMINENT EXECUTION RISKS MANIFEST AND IRREPARABLE HARM.

Mr. Johnson will suffer irreparable harm absent a stay because in the absence of immediate relief, no court could reverse the harm caused by proceeding.  *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019) ("[I]rreparable harm is often suffered when . . . the district court cannot remedy the injury following a final determination on the merits." (alterations in original) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).

"In cases involving the death penalty when an execution date has been set, as here, it is a certainty that irreparable harm will result if the court of appeals' decision is not stayed."  *Beaver v. Netherland*, 101 F.3d 977, 979 (4th Cir. 1996). Mr. Johnson's execution, scheduled to occur later today, therefore presents an undeniable risk of irreparable harm.  *See, e.g.*, *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019) ("[I]rreparable harm is often suffered when . . . the district court cannot remedy the injury following a final determination on the merits." (alterations in original) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001))); *Oken v. Sizer*, 321 F. Supp. 2d 658, 666 (D. Md. 2004) ("[T]he irreparable harm to one seeking a stay of execution is ordinarily obvious."); *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) (per curiam)

13

("[I]n a capital case, the possibility of irreparable injury weighs heavily in the movant's favor . . . ." (citation omitted)).

### III.    THE GOVERNMENT WILL NOT SUFFER ANY UNFAIR PREJUDICE IF THE COURT ENTERS A STAY.

Here, Mr. Johnson requests a stay only long enough to have his claim adjudicated by this Court. The briefing is complete and oral argument has been waived. The relevant legal issues are neither novel nor complicated; they are controlled by well-established and straightforward case law concerning (1) the prohibition on amending criminal sentences and (2) the principle that an order entered by a court without subject-matter jurisdiction is void *ab intio* and unenforceable, regardless of whether a party brings a "timely" challenge.

Although the government normally has a "strong interest" in "proceeding with its judgment," *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004) (citation omitted), no such interest exists here, where the government itself has caused a decade-long delay in bringing Mr. Johnson's case to this point. The government initially set an execution date for Mr. Johnson in 2006 but was unable to carry the execution out at that time because of flaws in its execution protocol. Tasked by the courts with the job of replacing its flawed protocol, the government passed the next eight years, from 2011 to 2019, without any execution protocol at all. Mem. Op. at 14, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. Nov. 20, 2019), ECF No. 50. Given that briefing is complete and oral

14

argument has been waived, the government can scarcely argue now that a short delay to allow this Court to resolve Mr. Johnson's claim would infringe its interests.

## IV.    THE PUBLIC INTEREST FAVORS A STAY.

Resolution of this matter on the merits serves a clear public interest: the prevention of an execution carried out pursuant to a null and void sentencing order. Permitting Mr. Johnson's execution under an order issued on no more than the whim of the government would undermine the public's trust in the justice system. Any short delay caused by the relief Mr. Johnson seeks is heavily outweighed by the proper observation of the fundamental powers of the judiciary.

A stay would also serve the Court's own interests. The district court in this matter denied Mr. Johnson the same relief that the District of Maryland granted the defendant in *Higgs* on a similar body of facts. This case therefore presents an opportunity for the Court to clarify the law, and possibly to resolve an internal conflict between courts in this Circuit. The government's position, that *Higgs* alone should proceed, does violence both to the continuity of law in this Circuit and the individual rights of Mr. Johnson.

15

V.    **ANY DELAY IN BRINGING THIS MOTION WAS NEITHER UNDUE NOR RELEVANT TO THE COURT'S DISPOSITION OF THE QUESTION ON APPEAL.**

As Mr. Johnson recognized in his motion before the district court and briefing before this Court, any delay in bringing this claim is due not to Mr. Johnson's own lack of diligence but to the recent decision of the U.S. District Court for the District of Maryland in *Higgs*, which alerted counsel to this argument as it applied to Mr. Johnson's similar position. To the extent this created a delay, it was neither intentional nor undue, particularly compared to the years-long period that the government has waited to establish an execution protocol.

And regardless of whether any such delay was undue, it is in any event irrelevant. A court order that is void for lack of jurisdiction is void *ab initio*, regardless of when it is challenged. *See Hill v. Clarke*, Case No. 16CV00514, 2017 WL 4770967, at *4 (W.D. Va. Oct. 19, 2017) ("Void orders can be challenged at any time.").

## CONCLUSION

Mr. Johnson respectfully requests that the Court stay his execution to permit it time to consider the question presented in this appeal.

Dated: January 14, 2021                    Respectfully submitted,

                                           /s/ David E. Carney
                                           David E. Carney
                                           Donald P. Salzman
                                           Jonathan Marcus

16

Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
david.carney@skadden.com

*Counsel for Corey Johnson*

17

## CERTIFICATE OF COMPLIANCE

1.      This motion contains 3,824 words, excluding the parts of the brief exempted from the word count by Fed. R. App. P. Rule 27(d)(2) and Rule 32(f).

2.      This motion complies with the font, spacing, and type size requirements set forth in Fed. R. App. P. Rule 32(a)(5).

/s/ David E. Carney

## **CERTIFICATE OF SERVICE**

I certify that on this 14th day of January 2021, the foregoing document was served on all parties or their counsel of record though the CM/ECF system, which will then send notification of such filing to all parties and counsel included on the Court's Electronic Mail notice list.

/s/ David E. Carney
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
david.carney@skadden.com

*Counsel for Corey Johnson*